IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 12-cv-02367-LTB-BNB

DOUG HITCHENS & SHERYL HITCHENS,

    Plaintiffs,

v.

THOMPSON NATIONAL PROPERTIES, LLC,

    Defendant.

_____

ORDER
_____

This matter is before me on Plaintiffs Doug and Sheryl Hitchens' Statement of Damages [Doc. # 42], filed on April 8, 2014.

## I. BACKGROUND

Plaintiffs' motion was filed after I granted in part and denied in part Plaintiffs' Motion for Summary Judgment on March 18, 2014. [*See* Doc. # 39]. Plaintiffs' motion asserts that attorney's fees are appropriate pursuant to the Parties' Guaranty Agreement, which awards costs, expenses and reasonable attorney's fees to the prevailing party in any action to enforce or interpret the Guaranty Agreement. [*See* Doc. # 28, ex. 1, 4]. Plaintiffs have requested a total $145,482.36 in damages including $100,000 for the principal of the Note, $24,187.50 in accrued interest, and $21,294.86 in attorney's fees and costs. [*Id.*] Plaintiffs do not dispute the $372.36 in costs and thus this amount will be added to the total calculation in this order. [*Id.*]

Additionally, Defendant does not dispute the principal due or the accrued interest, as such those amounts will be awarded. Thus, my discussion is limited to Plaintiffs' alleged attorney's fees of $21,294.86. [Doc. # 42].

## II. DISCUSSION

The Guaranty Agreement provides that Defendant "agrees to the extent permitted by law, to pay any costs or expenses, including the reasonable fees of an attorney, incurred by the Noteholders [Plaintiffs] in enforcing this Guaranty." [Doc. # 3, ex. 2, ¶ 3]. Plaintiffs, as the undisputed prevailing party, seek $21,294.86 in attorneys' fees incurred in presenting their claims against Defendant decreased from $26,294.86 based on a bulk professional discount of $5,000 Plaintiffs' attorneys had applied. Defendant contends that the Plaintiffs' fees are unreasonable.

The Guaranty Agreement's terms permit Plaintiffs to recover "reasonable fees of an attorney." [*Id*.] Because that phrase appears in various statutes and is the subject of a well-established body of case law, and in the absence of any evidence indicating that the Parties intended some different interpretation of the phrase to apply, I apply the familiar "lodestar" analysis to determine what constitutes a reasonable fee here. To calculate the lodestar figure I multiply a reasonable hourly rate by the number of hours reasonably incurred by Plaintiffs' counsel. *See generally Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In doing so, I must address whether that lodestar figure should be adjusted upwards

or downwards based on the particular circumstances of the case.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  The goal of the exercise is to produce "an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010).

The party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Hensley*, 461 U.S. at 433; *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir.1995); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).  The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."  *Id.*; *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks. ") (citation omitted).

**A.      Hourly Rate**

The first step in calculating a fee award is to determine the number of hours reasonably spent by counsel for the party seeking the fees. *Hensley*, 461 U.S. at 437. A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc*., 295 F.3d 1065, 1078 (10th Cir. 2002). A court may use its own knowledge of the prevailing market rate to determine whether the claimed rate is reasonable. *Yarmouth Grp. Prop. Mgmt*, 295 F.3d at 1079; *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates of lawyers with comparable skill and experience practicing" in the relevant market). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). In order to satisfy this burden, the party requesting fees must produce "satisfactory evidence-in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Four attorneys and three paralegals performed work on this case. James Dallner's hourly rate is $250. Mr. Dallner indicates that he graduated from law school in 2005, has been licensed to practice for eight years, and is licensed in several states and federal courts including Colorado, Montana, Nevada, and North Dakota. He also contends that he "has significant experience litigating insurance subrogation matters and contract disputes . . . and has handled a number of state and federal court appeals. [Doc. # 42, ex. 2 & Doc. # 47, ex. 1, 3-4]. Phillip Lorenzo's

hourly rate is $430.  Mr. Lorenzo graduated law school in 1980, has 30 years of experience litigating complex business and commercial disputes, and "regularly handles trial, arbitration, mediation and appeal of large construction, fire subrogation and business matters." [Doc. # 47, ex. 1, 4].  Michael Martin's hourly rate is $405.  Mr. Martin has 25 years of experience and "regularly handles complex commercial litigation, including securities matters." [*Id.*]  Michael Roche's hourly rate is $405.  Mr. Roche graduated law school in 1990 and has 20 years of experience litigating complex business and commercial disputes.  [*Id.*]  As for the paralegals, their hourly rates range from $155 to $170.  [*Id.* at 3-4].

With regards to Mr. Dallner's hourly rate of $250, I find that it is a reasonable rate for an attorney of Mr. Dallner's experience in the Denver legal market.  *See Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *7 n.10 (D. Colo. May 24, 2013) (collecting comparable cases).  The higher billing rates of Mr. Lorenzo at $430 an hour, Mr. Martin at $405 an hour, and Mr. Roche at $405 an hour, are also reasonable rates for attorneys of their experience in the Denver legal market.  *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas Corp.*, 958 F. Supp. 2d 1238 (D. Colo. 2013) (holding that "the prevailing rates in Denver for experienced litigators approach $400 per hour in recent years," with $ 450 per hour representing the maximum hourly rate that could be considered reasonable for lead trial counsel); *Jankovic v. Exelis, Inc.*, Case No. 12-cv-01430-WJM-KMT, 2013 WL 1675936 (D. Colo. Apr. 17, 2013) (approving rate of $430 per hour); *Watson v. Dillon Cos.*, Inc., Case No. 08-cv-00091-WYD-CBS, 2013 WL 4547521, *2 (D. Colo. Aug. 28, 2013) (approving rate of $550 per hour for lead attorney); *Biax Corp. v. NVIDIA Corp.*, Case No. 09-cv-01257-PAB-MEH, 2013 WL 4051908 (D. Colo. Aug. 12, 2013) (relying on 2010 National Law Journal

("NLJ") billing survey showing Denver firms billed between $285 and $810 per hour for partners; approving rates of over $700 per hour for partners with comparable experience).

However, Plaintiffs fail to address whether the three paralegals' hourly rates of $155-170 are reasonable. Based on the statement of services (Doc. #. 47, ex. 1), three different paralegals billed compensable time in this case, but Plaintiffs have not provided any indication of each paralegals' qualifications and experience. Accounting for inflation, and because Plaintiffs have provided no support for exceeding the average, I find that an hourly rate of $110 is reasonable for work performed by paralegals. *See e.g., Salinier v. Moore*, 2010 WL 3515699 (D. Colo. Sept. 1, 2010) (providing $100 an hour for paralegal services). Thus, the fee for the paralegals' work is reduced from $5,360 to $3,476.

B.    **Number of Hours**

Because I determined that the reasonable hourly rates for Plaintiffs' counsel and paralegals in connection with this matter and find those adjusted hourly rates are reasonable, I now turn to whether the number of hours incurred were "reasonably expended."

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Delaware Valley Citizens' Council for Clean Air*, 483 U.S. at 717 n. 4. Plaintiffs must demonstrate that their counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth*, 406 F.3d 1245, 1257 (10th Cir. 2005). If not, a court should take extra care to ensure that an attorney has not included unjustified charges in his

billing statement. *Id.* "In determining what is a reasonable time in which to perform a given task," a court should also consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554. Ultimately, the court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Id*. at 553. The Tenth Circuit has also opined that "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares*, 801 F.2d at 1203 (reduction in fees appropriate due to inexperience of an attorney which led to over-billing).

Turning to the hours billed by the attorneys on the case, I find that the time was billed in blocks in which there are several activities combined, making it impossible to determine how much time was allotted to each activity. *Robinson v. City of Edmond*, 160 F.3d 1275, 1284-85 (10th Cir. 1998) (holding that the practice of "block billing"– combining multiple tasks within a single period of time, instead of itemizing the time spent on each task– can "camouflage the work a lawyer does" and thus "naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary.") Additionally, the total number of hours billed by four partners in preparation for a breach of written contract case– one that was resolved on summary judgment– is excessive and not justified by the complexity of the case. Barring some explanation as to why the peculiarities of the case required such a top-heavy allocation of work, I cannot say that not having associates perform any of the billable

work in the case was reasonable. Thus, I find that an across-the-board reduction of 10% of Mr. Dallner's, Mr. Lorenzo's, Mr. Martin's, and Mr. Roche's billed hours is appropriate to reflect work that could have reasonably been performed by associates. Accordingly, the adjusted fee for the attorneys' work is reduced from $20,562.50 to $18,506.25.

**C.     Lodestar Amount**

Based on the aforementioned conclusions, I find that the lodestar figure for Plaintiffs' attorneys' fee request, including costs, is $22,354.61. This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys. *Blum*, 465 U.S. at 893-94.

### III.  CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiffs' Statement of Damages (Doc. # 42) is GRANTED in part and DENIED in part.

Accordingly, Plaintiffs are awarded $146,542.11 in damages, attorney's fees and costs.

Dated: May    29   , 2014 in Denver, Colorado.

                                        BY THE COURT:


                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE

8